J. Gary Gwilliam, Esq. (State Bar No. 33430)
Robert J. Schwartz, Esq. (State Bar No. 254778)
GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER
1999 Harrison Street, Suite 1600
Oakland, CA 94612-3528
Telephone: (510) 832-5411
Facsimile: (510) 832-1918
Email: ggwilliam@giccb.com
       rschwartz@giccb.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELENOR SKYE VILLANUEVA PATINO, a minor, by and through her Guardian ad Litem, JULIA VILLANUEVA, and LILLYANNA AMELIA PATINO, a minor, by and through her Guardian ad Litem, ADRIANNA LUCAS ANDRADE,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF MERCED, VERNON WARNKE, GREG SULLIVAN, COREY GIBSON, AARON ROSENBURG, CALIFORNIA FORENSIC MEDICAL GROUP, INC., JESSICA AGUILAR, BRANDON BOGGS, JAMIE BURNS, CINDY ESTREBILLO, CHIALIA LEWIS, DEBBIE MANDUJANO, AMBER NUNES, and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 1:18-cv-01468-AWI-SAB<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br>1. **VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)**<br>2. **VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 845.6**<br>3. **WRONGFUL DEATH**<br>4. **SURVIVAL**<br><br>**DEMAND FOR JURY TRIAL** |

FIRST AMENDED COMPLAINT     1     CASE NO. 1:18-cv-01468-AWI-SAB

**INTRODUCTION**

1. This case arose from the appalling deliberate indifference of the Merced County Sheriff's Office and its employees and contractors. On June 24, 2017, Luis Patino was incarcerated at the county's Main Jail. He was 29 years old and in good health. Unfortunately, Mr. Patino soon became ill, which he repeatedly reported to jail staff. His family did the same. Eventually, Mr. Patino met with a nurse, who checked his blood pressure and told him to undress and lay on the floor of a solitary confinement cell so the pain would go away.

2. At the time, Mr. Patino was suffering from valley fever, a fungal infection common in the San Joaquin Valley. The disease is generally mild, although it can develop into a chronic form of pneumonia or disseminated coccidioidomycosis, which occurs when the infection spreads from the lungs to other parts of the body. Valley fever is both easily diagnosed and treatable through antifungal medications.

3. Merced County and its employees and contractors knew that Mr. Patino suffered from a serious medical condition, yet did nothing, causing him physical torture and a lingering death from disseminated coccidioidomycosis on September 27, 2017, only three months after he entered the jail. But for their deliberate indifference, Mr. Patino would be alive today.

4. This action is brought by Mr. Patino's daughters, Elenor Skye Villanueva Patino (age 4) and Lillyanna Amelia Patino (age 10), through their respective Guardian ad Litems.

**JURISDICTION AND VENUE**

5. Pursuant to 28 U.S.C. section 1331, the Court has original jurisdiction over this action because it arises under, *inter alia*, the Constitution and laws of the United States. Plaintiffs Elenor Skye Villanueva Patino, a minor, by and through her Guardian ad Litem, Julia Villanueva, and Lillyanna Amelia Patino, a minor, by and through her Guardian ad Litem, Adrianna Lucas Andrade (collectively, "Plaintiffs"), further invoke the supplemental jurisdiction of this Court to hear and decide claims arising under state law.

6. At all times mentioned herein, the defendants were acting under color of state law or rights established under the Eighth and Fourteenth Amendments to the United States Constitution and the laws of the United States. The Court has supplemental jurisdiction over

those claims asserted under state law, pursuant to 28 U.S.C. section 1367.

7. The Court has personal jurisdiction over the defendants because, *inter alia*, they transact business in and engaged in wrongdoing in the District.

8. Pursuant to 28 U.S.C. section 1391(b)(1)-(2), venue is proper because the defendants reside in this District and a substantial part of the events or omissions giving rise to the action occurred in the District.

**CONDITIONS PRECEDENT**

9. For the state law claims against public entities and employees, on March 21, 2018, Plaintiffs timely filed a government claim against the County of Merced and its employees. The county rejected the claim on April 24, 2018.

**PARTIES**

10. Plaintiff Elenor Skye Villanueva Patino ("Elenor Skye"), a minor, by and through her Guardian ad Litem, Julia Villanueva (her mother), is Luis Patino's daughter. She was born on August 19, 2014. Elenor Skye is, and was at all times herein mentioned, a citizen of the United States and a resident of the County of Stanislaus.

11. Plaintiff Lillyanna Amelia Patino ("Lillyanna"), a minor, by and through her Guardian ad Litem, Adrianna Lucas Andrade, is Mr. Patino's daughter. She was born on October 26, 2007. Lillyanna is, and was at all times herein mentioned, a citizen of the United States and a resident of the County of Merced.

12. Defendant County of Merced ("Merced County") is a county, incorporated, duly organized, and existing under the laws of the State of California. Merced County operates under its authority the Merced County Sheriff's Office. The Sheriff's Office operates the Main Jail at 700 W. 22nd Street in Merced, where Luis Patino was incarcerated at the time of his death. Merced County is vicariously liable for defendants Vernon Warnke, Greg Sullivan, Corey Gibson, and Aaron Rosenburg's violations of Mr. Patino's constitutional rights, resulting in his death.

13. Based upon the principles set forth in *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978), Merced County is liable for the deprivation of Luis Patino's

rights protected by the United States Constitution, as set forth herein. Merced County bears responsibility because its policies, practices, and/or customs caused Mr. Patino's injuries. In particular, Merced County and its officials, including, but not limited to, Vernon Warnke, Greg Sullivan, Corey Gibson, and Aaron Rosenburg, maintained or permitted one or more of the following official policies, customs, and/or practices:

   a. Failure to provide adequate training and supervision of Merced County Sheriff's Office employees and agents with respect to the constitutional limits on search, seizure, arrest, and detention;
   b. Failure to adequately discipline or retrain employees involved in misconduct;
   c. Selection, retention, and assignation of employees with demonstrable propensities for violation of constitutional rights;
   d. Condonation and encouragement of employees in the belief that they can violate the rights of persons such as Mr. Patino with impunity, and that such misconduct will not adversely affect their opportunities for promotion and other employment benefits; and
   e. Ratification at the highest levels of authority of the specific unconstitutional acts alleged herein.

14. Defendant Vernon Warnke ("Warnke") is Merced County's Sheriff/Coroner. He was sworn into office in December 2014. Warnke committed the acts complained of herein while acting within the course and scope of his official duties. He is sued in both his individual and official capacities.

15. Defendant Greg Sullivan ("Sullivan") is a Captain with the Merced County Sheriff's Office. He is in charge of the operations of the jail and its staff. Sullivan committed the acts complained of herein while acting within the course and scope of his official duties. He is sued in both his individual and official capacities.

16. Defendant Corey Gibson ("Gibson") is a Captain with the Merced County Sheriff's Office. As the Captain of Corrections, he is responsible for the correctional facilities, court security, the civil division, and community supervision of inmates released on electronic

monitoring. Gibson committed the acts complained of herein while acting within the course and scope of his official duties. He is sued in both his individual and official capacities.

17. Defendant Aaron Rosenberg ("Rosenburg") is a Lieutenant with the Merced County Sheriff's Office. He is assigned as the supervisor of the Merced County Sheriff's Main Jail, Supervised Release Team, Court Security Division, and Civil Division. Rosenburg committed the acts complained of herein while acting within the course and scope of his official duties. He is sued in both his individual and official capacities.

18. Defendant California Forensic Medical Group, Inc. ("CFMG") provides health care services to adult and juvenile corrections facilities in California. CFMG contracts with Merced County to administer medical care and medication at its Main Jail, where Luis Patino was incarcerated. The company was founded in 1983 and is based in Monterey, California. "CFMG employees have assumed a public function in providing medical care to inmates on behalf of the County. In performing this function, they are state actors whose conduct is limited by the Eighth Amendment. . . . As such, if CFMG employees commit a constitutional violation, and the moving force behind this violation was a County policy manifesting deliberate indifference to constitutional rights, then the County may be liable." *Hagan v. California Forensic Med. Group*, CIVS07-1095 LKK/DAD, 2009 WL 728465, at *7 (E.D. Cal. Mar. 5, 2009) (citing *Sutton v. Providence St. Joseph Med. Ctr.,* 192 F.3d 826, 835–836 (9th Cir.1999)).

19. Defendant Jessica Aguilar ("Aguilar") is a CFMG employee providing health care services for Merced County at its Main Jail, where Mr. Patino was incarcerated. Aguilar committed the acts complained of herein while acting within the course and scope of her official duties. She is sued in both her individual and official capacities.

20. Defendant Brandon Boggs ("Boggs") is a CFMG employee providing health care services for Merced County at its Main Jail, where Mr. Patino was incarcerated. Boggs committed the acts complained of herein while acting within the course and scope of his official duties. He is sued in both his individual and official capacities.

21. Defendant Jamie Burns ("Burns") is a CFMG employee providing health care services for Merced County at its Main Jail, where Mr. Patino was incarcerated. Burns

1  committed the acts complained of herein while acting within the course and scope of her official
2  duties.  She is sued in both her individual and official capacities.

3        22.     Defendant Cindy Estrebillo ("Estrebillo") is a CFMG employee providing health
4  care services for Merced County at its Main Jail, where Mr. Patino was incarcerated.  Estrebillo
5  committed the acts complained of herein while acting within the course and scope of her official
6  duties.  She is sued in both her individual and official capacities.

7        23.     Defendant Chialia Lewis ("Lewis") is a CFMG employee providing health care
8  services for Merced County at its Main Jail, where Mr. Patino was incarcerated.  Lewis
9  committed the acts complained of herein while acting within the course and scope of her official
10 duties.  She is sued in both her individual and official capacities.

11       24.     Defendant Debbie Mandujano ("Mandujano") is a CFMG employee providing
12 health care services for Merced County at its Main Jail, where Mr. Patino was incarcerated.
13 Mandujano committed the acts complained of herein while acting within the course and scope of
14 her official duties.  She is sued in both her individual and official capacities.

15       25.     Defendant Amber Nunes ("Nunes") is a CFMG employee providing health care
16 services for Merced County at its Main Jail, where Mr. Patino was incarcerated.  Nunes
17 committed the acts complained of herein while acting within the course and scope of her official
18 duties.  She is sued in both her individual and official capacities.

19       26.     Plaintiffs are informed and believe, and thereon allege, that each defendant is, and
20 at all times mentioned herein was, the agent, employee, representative, successor, and/or
21 assignee of each other defendant.  Each defendant, in doing the acts or in omitting to act, as
22 alleged herein, was acting within the scope of his or her actual and apparent authority, or the
23 alleged acts and omissions of each defendant as agent were subsequently ratified and adopted by
24 each other defendant as principal.  Plaintiffs are informed and believe that each of the individual
25 defendants was in some way responsible for the constitutional violations and torts herein alleged.

26       27.     Plaintiffs are ignorant of the true names and capacities of the defendants sued
27 herein as Does 1-10, inclusive, and therefore sue these defendants by such fictitious names and
28 capacities.  Plaintiffs are informed and believe, and on that basis allege, that each defendant sued

under such fictitious names is in some manner responsible for the occurrences herein alleged, and that their injuries as herein alleged were proximately caused by the conduct of such defendants.

## STATEMENT OF FACTS

28.     Luis Patino was born on June 7, 1988, in Texas.  He was raised by his mother, Maria Patino, who had six children.  Mr. Patino primarily resided with his mother in Livingston, California.  He was employed as a mechanic, with his final employment at Balswick's Tire and Auto Service in Turlock.  Mr. Patino had a history of asthma, bipolar disorder, anxiety, and depression.

29.     On October 26, 2007, plaintiff Lillyanna Amelia Patino was born to Luis Patino and Adrianna Lucas Andrade, who were high school sweethearts.  During the first four years of Lillyanna's life, Mr. Patino was an involved parent, providing love and support to his daughter.  Thereafter, he had regular visits with Lillyanna, who was devastated by his passing.  Mr. Patino provided regular support to Lillyanna in the form of presents and child support.

30.     On August 19, 2014, plaintiff Elenor Skye Villanueva Patino was born to Luis Patino and Julia Villanueva, who resided together.  Mr. Patino loved Elenor Skye and provided regular support in the form of presents and child support.

31.     From April 14, 2017, to May 2, 2017, Luis Patino was incarcerated at the Merced County Main Jail for violation of probation and other offenses.  On or about April 23, 2017, he filed a grievance with the Merced County Sheriff's Office Custodial Division.  Mr. Patino complained: "I've been fed like a [sic] animal had all my food thrown at me in unsanitized conditions.  Rooms smelling like feesis [sic] and pubic hairs all over every wall.  Poop on the walls.  Yes I had to sleep, eat and breath [sic] under these unhumane [sic] conditions."  Mr. Patino requested a transfer from the yellow housing, for mentally ill inmates, to the green and white housing.  The grievance was summarily denied on April 24, 2017, one day later.

32.     On June 24, 2017, Luis Patino was again incarcerated at the Merced County Main Jail for violation of probation and other offenses.  He would remain there until his untimely death on September 27, 2017, approximately three months later.  At booking, Mr. Patino

1  completed a questionnaire, reporting heart disease, high blood pressure, asthma, psychiatric
2  disorder (bipolar and post-traumatic stress disorder but not taking medication), and suicide
3  attempt.  He was identified as having special conditions for "CAUTION" and "MEDICAL" and
4  being at high risk for "ATTN MEDICAL," "MEDICAL EMERGENCY," "MENTAL," and
5  "SUICIDAL."

6  33. During his confinement at Merced County's Main Jail, Mr. Patino developed a
7  medical condition requiring treatment: valley fever, a fungal infection caused by coccidioides.
8  The fungi that cause valley fever thrive in the arid and desert soils of California's San Joaquin
9  Valley, among other areas.  The spores are extremely small and can be carried hundreds of miles
10 by the wind.  Once inside the lungs, the spores reproduce, perpetuating the cycle of the disease.

11 34. Valley fever is the initial form of the coccidioidomycosis infection, which can
12 develop into a more serious disease, including chronic and disseminated coccidioidomycosis.
13 The initial, or acute, form of coccidioidomycosis is often mild, with few, if any, symptoms.  If
14 the initial coccidioidomycosis infection does not completely resolve, it may progress to a chronic
15 form of pneumonia known as chronic coccidioidomycosis.  This complication is most common
16 in people with weakened immune systems.  The most serious form of valley fever, disseminated
17 coccidioidomycosis, occurs when the infection disseminates beyond the lungs to other parts of
18 the body, often including the skin, bones, liver, brain, heart, and the membranes that protect the
19 brain and spinal cord (meninges).  The signs and symptoms of disseminated coccidioidomycosis
20 depend on which parts of the body are affected and may include nodules, ulcers, and skin
21 lesions; painful lesions in the skull, spine, or other bones; painful, swollen joints, especially in
22 the knees or ankles; and meningitis.

23 35. Coccidioidomycosis has been described in a number of prisons in endemic areas,
24 with a large degree of associated morbidity.  In California, a large burden of disease occurs in
25 state and federal correctional institutions in the San Joaquin Valley.  The incidence has been
26 increasing in some prisons, with rates as high as 7 percent during 2006–2010.

27 36. Valley fever is easily diagnosed, with healthcare providers relying on medical and
28 travel history, symptoms, physical examinations, and laboratory tests to diagnose the disease.

The most common way that healthcare providers test for valley fever is by taking a blood sample and sending it to a laboratory to look for coccidioides antibodies or antigens. Other methods for diagnosing valley fever include a skin test, imaging tests such as chest x-rays or CT scans of the lungs to look for valley fever pneumonia, and a tissue biopsy.

37. Valley fever is a treatable medical condition, with mild cases usually resolving on their own. In more severe cases, doctors prescribe antifungal medications that can treat the underlying infection.

38. In conformance with the Merced County Sheriff's Office Corrections Bureau Inmate Handbook, Luis Patino completed Sick Call Request Forms in the weeks before his death, seeking medical assistance. Thus, on September 14, 2017, Mr. Patino complained that he was "[h]aving strong pain to [the] left side of [his] rib cage" and was treated by defendants Brandon Boggs and Cindy Estrebillo, two CFMG employees. According to CFMG's records, Mr. Patino was "seen for a non-traumatic musculoskeletal complaint: stated that his Left side [has] been hurting for 3 days now." Mr. Patino explained that "[h]e did not know how it started" and "that he was working out prior then the following day that's when the pain started." Mr. Patino described the pain as "sharp," rating it "as 7 on a scale of 0-10." In deliberate indifference to Mr. Patino's serious medical needs, he was diagnosed with "MS-Non Traumatic: Vague Muscle Pain" and given ibuprofen.

39. On September 19, 2017, Luis Patino was given an influenza vaccine by defendants Jamie Burns and Chialia Lewis, two CFMG employees.

40. On September 20, 2017, Luis Patino again requested urgent medical assistance and was again met with deliberate indifference. CFMG's records show that Mr. Patino complained, "I'm still having pains while breathing can I be checked again[?]" He also complained of "shortness of breath, a cough, chest pain during and after coughing. Symptoms started on/around 09/17/2017, beginning approximately 3 day/s [sic] ago, onset was gradual." In addition, Mr. Patino reported that his cough was "productive with yellow sputum, this problem is continuous." He was treated by two CFMG employees, defendants Brandon Boggs and Amber Nunes, who claimed that Mr. Patino "appear[ed] to be in no apparent distress" and diagnosed

him with a "Common Cold – Upper Respiratory Infection," onset 9/20/17, and prescribed guaifenesin (an expectorant) and chlorpheniramine (an antihistamine).

41.     On September 21, 2017, Luis Patino again complained of "[c]hest pain." According to CFMG's records, "The onset was gradual, beginning approximately 3 days ago. Symptoms are made worse by nothing.  Current symptoms include: pain, cough.  Pain is described as sharp, and is a 5 on a scale of 1-10, located in the general chest area, patient is unable to locate specific area of pain, pain does not radiate. . . . patient has had similar problems in the past that include 'I've had a cough, & was seen recently & the medication I was started on is not helping!' . . . Symptoms are made better by nothing.  [Mr. Patino] claims he does not feel safe in current cell w/active Northern Gang population.  [Mr. Patino] states, 'If you feel I would be better monitored in intake area, I will go.  I do not let my cell mates sleep or rest, with my constant medical complaints.  I believe they are getting upset with me.'"  Mr. Patino was diagnosed with "Chest Pain: Musculal-Skeletal," onset 9/14/17, but given no treatment, again in deliberate indifference to his serious medical needs.

42.     According to the Sheriff's Office Incident Report, on September 21, 2017, at approximately 8:13 p.m., Luis Patino was placed in a sobering cell for medical evaluation by Officers Tou Lee and Samuel Spangler and defendant Jessica Aguilar, a CFMG nurse.  Per Tou Lee: "ON 9/21/17 ONE BLOCK WAS CALLED FOR KEYS.  OFFICER SPANGLER 5327 AND I 5359 RESPONDED.  INMATES IN CELL FOUR WAIVED US DOWN.  INMATES IN CELL FOUR TOLD ME THAT INMATE PATINO HAS EXTREME CHEST PAIN.  INMATE PATINO WAS ESCORTED TO MEDICAL.  NURSE JESSICA EVALUATED INMATE PATINO AND DETERMINE [sic] TO PLACE HIM INTO SOBERING CELL FOR OBSERVATION.  INMATE PATINO WAS PLACED INTO SOBERING CELL TWO AND A LOG WAS STARTED."  CFMG records from 8:40 p.m. showed that Mr. Patino had a "[c]ontinuous cough."

43.     On September 22, 2017, at approximately 6:41 a.m., Mr. Patino was interviewed by Officer A. Goins, who reported: "I SPOKE WITH PATINO IN REGARDS TO HIS STATUS WITH THE NORTENO GANGS.  PATINO WAS PLACED IN MEDICAL OBS, WHICH IS A

COMMON WAY FOR ACTIVE GANG MEMBERS TO LEAVE THE CELL WITHOUT BEING ASSAULTED IN THE ATTEMPT TO 'DROP OUT.' PATINO STATED THAT HE WANTED TO RETURN TO THE CELL AND DENIED ANY SAFETY CONCERNS HOUSING BACK WITH THE ACTIVE NORTENO GANG MEMBERS. PATINO DENIED ANYTHING THAT WOULD HAVE HIM 'REMOVED' AND SEEMED CONFUSED WHEN I ASKED HIM IF HE WAS GOOD TO GO BACK. PATINO STATED 'YEA IM UP HERE BECAUSE IM SICK.' PATINO IS CLEARED TO RETURN TO HIS CELL 1-4."

44. On September 22, 2017, at approximately 9:00 a.m., CFMG records show that Luis Patino stated that "he still does not feel well. He is still [complaining of] chest pain and coughing. States he wants to roll up out of his cell because it is not safe for him to be there. He states that he wants to hurt everyone around him." Mr. Patino was given "Tylenol 650 mg PO x 1 dose for fever," again in deliberate indifference to his serious medical needs.

45. According to the Sheriff's Office Incident Report by CO II Wibright, J 5325: "WHILE IN MEDICAL OFFICE, RN AMBER [NUNES-CHALUPA] TOLD ME INMATE PATINO WANTED TO ROLLUP. AMBER TOLD ME PATINO SAID HE FELT LIKE HURTING PEOPLE IN THE CELL AND THAT HE NORMALLY DOESN'T HOUSE WITH GANG MEMBERS." Wibright continued: "AS I ESCORTED INMATE PATINO TO INTERVIEW ROOM, HE TOLD ME HE CAN'T BE IN THERE ANYMORE. HE SAID HE FEELS LIKE HURTING 'THEM.'" Finally, per Wibright: "I INFORMED CLASSIFICATION OFFICER GOINS OF WHAT TRANSPIRED AND THAT PATINO WAS IN INTERVIEW 3."

46. According to Report #2 by Officer A. Goins 5328: "I SPOKE WITH PATINO IN REGARDS TO HIS 'ROLL UP' FROM 1 BLOCK CELL 4. PATINO STATED THAT HE DID NOT ROLL UP BUT HE COULD NOT BE IN THERE AT THIS TIME DUE TO HIS 'MENTAL STATUS.' PATINO STATED THAT HE WANTED TO HURT SOMEBODY. I ASKED PATINO IF HE FELT LIKE HE NEEDED TO GO TO SAFETY. PATINO STATED HE DID." Goins continued: "I ADVISED SERGEANT LOPEZ OF THE SITUATION IN WHICH MEDICAL RESPONDED. CFMG NURSE AMBER SPOKE WITH PATINO AND IT WAS DETERMINED THAT PATINO DID NOT NEED TO GO TO SAFETY AT THIS

1  TIME. PATINO WAS LEFT IN INTERVIEW ROOM FOR COOL OFF PERIOD UNTIL
2  FURTHER NOTICE." Finally, per Goins: "MENTAL HEALTH DEBBIE SPOKE WITH
3  PATINO IN REGARDS TO HIS STATEMENTS. PATINO ADVISED THAT HE HAS NOT
4  BEEN TAKING HIS MEDICATION AND REQUESTED TO BE PLACED BACK ON IT.
5  PATINO WILL BE PLACED IN A HOLDING CELL AND GIVEN HIS MEDICATION.
6  PATINO WILL HAVE A HOUSING REVIEW TOMORROW. (9/23/17)"

7      47.    According to CFMG's records, on September 22, 2017, at approximately 6:14
8  p.m., Luis Patino again complained of left sided chest pain, possibly related to cough and laying
9  on floor. Despite his serious medical needs, Mr. Patino was placed in a cell with no mattress.

10      48.    According to the Sheriff's Office Incident Report re: housing assessment prepared
11  by Officer A. Goins, "I SPOKE WITH PATINO IN REGARDS TO HIS HOUSING STATUS.
12  PATINO RECENTLY WAS PLACED ON A MEDICAL LOG DUE TO HIS MENTAL
13  HEALTH. HE CLEARED THE LOG AND WAS PLACED BACK IN THE CELL. WITHIN
14  A FEW HOURS PATINO ROLLED UP THROUGH MEDICAL AND STATED THAT HE
15  WAS STILL GOING THROUGH IT AND WISHED TO BE BY HIMSELF SO HE
16  WOULDN'T 'GO OFF' ON ANYONE." Goins continued: "PATINO WAS HOUSED ALONE
17  FOR TWO DAYS AND WAS STABILIZED ON HIS MENTAL HEALTH MEDICATION.
18  PATINO REQUESTED TO RETURN TO HOUSING TO THE BLOCKS AND DENIED ANY
19  SAFETY CONCERNS." Further from Goins: "I EXPRESSED MY CONCERN OF
20  RETURNING PATINO TO THE BLOCKS. PATINO JUSTIFIED THAT HE WOULD BE
21  OKAY AND WOULDN'T HAVE ANY ISSUES RETURNING." Per Goins: "I SPOKE WITH
22  SERGEANT TILLEY ABOUT PATINO'S REQUEST. SERGEANT TILLEY REQUESTED
23  THAT PATINO SIGN HIS CLASSIFICATION NOTICE AND THAT I SPEAK WITH THE
24  CELL." Goins continued: "I SPOKE WITH NORTENO CELL 1-4 IN REGARDS TO PATINO
25  RETURNING. THE CELL ASKED WHERE HE HAS BEEN AND ASKED IF HE WAS
26  OKAY. I EXPLAINED THAT PATINO HAS HOUSED ALONE UNDER MEDICAL OBS
27  DUE TO HIS MENTAL HEALTH STATUS. THE CELL STATED THAT PATINO COULD
28  RETURN AND DENIED ANY SAFETY CONCERNS." Finally, per Goins, "I SPOKE WITH

PATINO IN REGARDS TO MY CONVERSATION WITH THE CELL.  PATINO STATED THAT HE FELT COMFORTABLE TO HOUSE BACK IN THE BLOCK.  PATINO SIGNED THE CLASSIFICATION NOTICE AND WAS CLEARED TO HOUSE BACK IN NORTENO CELL 1-4."

49.   In the two weeks preceding Luis Patino's death, three of his sisters, Maria Gonzalez, Guiyermima Patino, and Leticia Patino, visited the Main Jail and complained that Mr. Patino required urgent medical attention.  Unfortunately, those complaints were met with deliberate indifference.  Indeed, Guiyermima Patino was told, "we are not a babysitting place."

50.   On or about September 24, 2017, Luis Patino was visited by his mother, Maria Patino.  Mr. Patino appeared sickly and was feverish, complaining of a sharp pain in his abdomen and loss of appetite.  Mr. Patino explained that he had completed requests for medical assistance but had failed to receive adequate treatment, as set forth hereinabove.

51.   On September 25, 2017, two days before he died, Luis Patino was seen by defendant Debbie Mandujano, a CFMG employee, for a mental health/psychiatry visit.  Mr. Patino explained that he no longer wanted to take his mental health medications because they made him "feel weird."

52.   On September 27, 2017, Luis Patino died at Merced County's Main Jail, Block 1, Cell 4.  According to the Coroner Report, "At approximately 1920 Patino was participating in some callisthenic type exercises when he appeared to have suffered some kind of medical event.  While attempting to do pushups it appeared Patino had difficulty getting up.  One of the other cell mates came over and sat him up.  Patino appeared to have lost consciousness and was eventually taken out of his cell.  Deputy Cope said there was video of the incident.  He said there were several other individuals in the cell with Patino. . . . According to Detective Cope Patino was taking lithium for some kind of psychological disorder.  He said Patino was also reported to have high blood pressure."  Mr. Patino was treated by defendants Jamie Burns and Chialia Lewis, two CFMG employees.  No mention was made of valley fever at the time Mr. Patino's death was reported.

///

53. Thereafter, Mark Super ("Super"), Merced County's Forensic Pathologist, conducted an autopsy on Luis Patino, issuing a report on November 3, 2017. Super determined that Mr. Patino died of disseminated coccidioidomycosis, the most serious form of valley fever. Super found that Mr. Patino suffered from (1) pulmonary coccidioidomycosis; (2) paracervical, carinal, and hilar lymph node involvement by organizing coccidioidomycosis; (3) fibrinous exudates on external surfaces of pericardial sac and thymus; (4) generalized visceral congestion; (5) hepatomegaly (3075 grams), with steatohepatitus and eosinophilic infiltrates; and (6) splenomegaly (520 grams), congestive, with diffuse lymphoid hyperplasia and rare abscesses. Postmortem toxicology showed only a therapeutic blood level of chlorpheniramine (an antihistamine used to treat hay fever, allergies, and cold symptoms) and a subtherapeutic blood level of lidocaine (a local anesthetic), meaning the defendants never provided the antifungal medications required to save Mr. Patino's life.

54. But for the deliberate indifference of Merced County's medical, supervisory, and correctional staff to Luis Patino's health and safety, his untimely, excruciating, and preventable death from disseminated coccidioidomycosis would not have occurred. In particular, Merced County and its employees and contractors adopted policies, practices, and/or customs that (i) wholly failed to address the serious dangers to Mr. Patino's health and very life, and (ii) failed to provide for sufficient medical supervision of inmates and detainees. Moreover, Merced County failed to train and supervise employees and contractors such that existing policies were understood and enforced.

55. Luis Patino is survived by his daughters, plaintiffs Elenor Skye Villanueva and Lillyanna Amelia Patino. Plaintiffs, by and through their respective Guardian ad Litems, pursue claims under 42 U.S.C. section 1983, the Eighth and Fourteenth Amendments of the United States Constitution, and California law in that their father was subjected to cruel and unusual punishment, via the defendants' deliberate indifference to Mr. Patino's serious medical condition, resulting in mental anguish, pain, suffering, and his untimely and wrongful death.

///

///

# FIRST CAUSE OF ACTION

## 42 U.S.C. section 1983 for Violations of the Eighth and Fourteenth Amendments

### [Plaintiffs Against All Defendants]

56. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

57. The government has an obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs. If the authorities fail to do so, those needs will not be met, in some cases causing physical torture or a lingering death for the inmate. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). Deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment of the United States Constitution. *Id.* (citing *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under [42 U.S.C. section] 1983." *Estelle,* 429 U.S. at 104-105.

58. In doing the acts complained of herein, defendant Merced County; defendants Vernon Warnke, Greg Sullivan, Corey Gibson, Aaron Rosenburg, Jessica Aguilar, Brandon Boggs, Jamie Burns, Cindy Estrebillo, Chialia Lewis, Debbie Mandujano, and Amber Nunes (collectively, "Individual Defendants"); and Does 1-10, inclusive, and/or each of them, acted under color of law with deliberate indifference to Luis Patino's serious medical needs, constituting the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment of the United States Constitution, as enforced through the Fourteenth Amendment for detainees. The defendants knew of and disregarded Mr. Patino's serious medical condition or were aware of facts from which the inference could be drawn that a substantial risk of harm existed and actually drew such an inference. As set forth hereinabove, Mr. Patino repeatedly requested medical assistance as his condition deteriorated, as did his family, but the defendants acted with

deliberate indifference, causing Mr. Patino physical and mental torture and a lingering death, in violation of the Eighth and Fourteenth Amendments.

59. Merced County's policies, practices, and/or customs, as detailed above, were a moving force behind the deprivations of Luis Patino's rights under the Eighth and Fourteenth Amendments.

60. Merced County and the Individual Defendants' violations of Luis Patino's Eighth and Fourteenth Amendment rights, as set forth hereinabove, were a direct and proximate cause of Mr. Patino's undue and extreme pain, suffering, deterioration, both mental and physical, and his ultimate death, for which Plaintiffs are entitled to recover as his successors in interest.

61. In doing the things alleged herein, Merced County and the Individual Defendants' conduct was despicable. Merced County and the Individual Defendants acted toward Luis Patino with malice, oppression, fraud, and with willful and conscious disregard for Mr. Patino's rights, entitling Plaintiffs to an award of punitive damages.

## SECOND CAUSE OF ACTION

### Violation of California Government Code section 845.6

### [Plaintiffs Against All Defendants]

62. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

63. Pursuant to California Government Code section 845.6, "a public employee, and the public entity where the employee is acting within the scope of his employment, is liable if the employee knows or has reason to know that the prisoner is in need of immediate medical care and he fails to take reasonable action to summon such medical care."

64. As set forth hereinabove, Merced County, the Individual Defendants, and Does 1-10, inclusive, and/or each of them, knew or should have known that Luis Patino was in need of immediate medical care and failed to take reasonable action to summon such medical care. Mr. Patino repeatedly requested medical assistance as his condition deteriorated, as did his family, but the defendants failed to take reasonable action to diagnose and treat his illness, causing Mr. Patino's untimely and preventable death. Moreover, Merced County failed to adopt policies,

procedures, and training necessary to ensure identification or response to medical emergencies and ignored duties of medical staff to treat and monitor Mr. Patino's medical condition.

65. As a direct and proximate result of Merced County and the Individual Defendants' wrongful conduct, Luis Patino suffered lost earnings, funeral expenses, and other damages, which Plaintiffs are entitled to recover as his successors in interest.

66. In doing the things alleged herein, Merced County and the Individual Defendants' conduct was despicable. Merced County and the Individual Defendants acted toward Luis Patino with malice, oppression, fraud, and with willful and conscious disregard for Mr. Patino's rights, entitling Plaintiffs to an award of punitive damages.

**THIRD CAUSE OF ACTION**

**WRONGFUL DEATH**

**[Plaintiffs Against All Defendants]**

67. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

68. Pursuant to California Code of Civil Procedure section 377.60, "A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: (a) The decedent's . . . children[.]"

69. As set forth hereinabove, as a detainee at Merced County's Main Jail, Luis Patino relied on the county, the Individual Defendants, and Does 1-10, inclusive, and/or each of them, to treat his medical needs, which they were obliged to do. The defendants, and each of them, had a duty to Mr. Patino to exercise that degree of care, knowledge, and skill ordinarily possessed and exercised by other police or correctional officers, physicians and surgeons, clinics, nurses, attendants, and the like, engaged in said profession in the same or similar locality.

70. In the aforesaid examination, consultation, evaluation, diagnosis, and treatment, or lack thereof, of Luis Patino, Merced County and the Individual Defendants, and each of them, negligently failed to possess and exercise that degree of knowledge and skill ordinarily possessed and exercised by other police or correctional officers, physicians and surgeons, clinics, nurses,

attendants, and the like, engaged in said profession in the same or similar locality.

71. As a direct and proximate result of Merced County and the Individual Defendants' negligence, misdiagnosis, carelessness, recklessness, wantonness, and unlawfulness, Luis Patino sustained severe and serious injury, resulting in his untimely and preventable death from disseminated coccidioidomycosis.

72. As a direct and proximate result of the conduct of Merced County and the Individual Defendants, and each of them, and of the death of Luis Patino, Plaintiffs have been deprived of the moral support, society, and comfort of Mr. Patino and have been caused the loss of future services, earnings, financial support, contributions, gifts, and protection of Mr. Patino, to their great loss and damage in an amount to be shown according to proof.

## FOURTH CAUSE OF ACTION

### Survival

### [Plaintiffs Against All Defendants]

73. Plaintiffs incorporate by reference and reallege each and every allegation set forth above, as though fully set forth herein.

74. As set forth hereinabove, Merced County, the Individual Defendants, and Does 1-10, inclusive, and/or each of them, knew or should have known that Luis Patino was in need of immediate medical care and failed to take reasonable action to summon such medical care. Mr. Patino repeatedly requested medical assistance as his condition deteriorated, as did his family, but the defendants failed to take reasonable action to diagnose and treat his illness, causing Mr. Patino's untimely and preventable death. Moreover, Merced County failed to adopt policies, procedures, and training necessary to ensure identification or response to medical emergencies and ignored duties of medical staff to treat and monitor Mr. Patino's medical condition.

75. As a direct and proximate result of Merced County and the Individual Defendants' wrongful conduct, Luis Patino suffered lost earnings, funeral expenses, and other damages, which Plaintiffs are entitled to recover as his successors in interest.

76. In doing the things alleged herein, Merced County and the Individual Defendants' conduct was despicable. Merced County and the Individual Defendants acted toward Luis Patino

1 with malice, oppression, fraud, and with willful and conscious disregard for Mr. Patino's rights,
2 entitling Plaintiffs to an award of punitive damages.

**PRAYER FOR RELIEF**

WHEREFORE, plaintiffs Elenor Skye Villanueva Patino and Lillyanna Amelia Patino, by and through their respective Guardian ad Litems, pray for judgment against defendants County of Merced, Vernon Warnke, Greg Sullivan, Corey Gibson, Aaron Rosenburg, Jessica Aguilar, Brandon Boggs, Jamie Burns, Cindy Estrebillo, Chialia Lewis, Debbie Mandujano, and Amber Nunes, requesting entry of judgment as follows:

A. For general damages in an amount to be determined at trial;

B. For special damages in an amount to be determined at trial;

C. For punitive damages in an amount to be determined at trial;

D. For costs of suit and reasonable attorneys' fees pursuant to 42 U.S.C. section 1988 and other relevant statutes, including a contingency fee enhancement beyond the lodestar;

E. For prejudgment interest at the legal rate; and

F. For such other and further relief as the court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

DATE: April 26, 2019                                    GWILLIAM, IVARY, CHIOSSO, CAVALLI & BREWER


                                                        /s/ Robert J. Schwartz
                                                        _____
                                                        J. Gary Gwilliam
                                                        Robert J. Schwartz
                                                        Attorneys for Plaintiffs