# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **ELENOR SKYE VILLANUEVA PATINO et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**COUNTY OF MERCED et al.,**<br><br>**Defendants.** | CASE NO. 1:18-CV-01468-AWI-SAB<br><br>**ORDER GRANTING CFMG DEFENDANTS' MOTION TO DISMISS**<br><br>(Doc. No. 33) |

## I. Introduction

This lawsuit is about a man who suffered and died from a fungal disease commonly known as "Valley Fever" while the man was incarcerated in a Merced County jail. The man's two daughters, Elenor Patino and Lillyanna Patino, filed this lawsuit against Merced County and several members of the jail's staff, claiming that the county and staff members were deliberately indifferent to the man's serious medical needs in violation of the Eighth Amendment. Several of the staff members — namely, Jessica Aguilar, Brandon Boggs, Jamie Burns, Cindy Estrebillo, Debbie Mandujano, and Amber Nunes — moved the Court pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the deliberate indifference claim against them. That motion is now before the Court.

## II. Legal Standard for Rule 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will

not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). The Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. In assessing a motion to dismiss, courts may consider documents attached to the complaint, documents incorporated by reference in the complaint, or matters subject to judicial notice. In re NVIDIA Corp. Sec. Litig., 768 F.3d 1046, 1051 (9th Cir. 2014). If a motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made . . . ." Ebner v. Fresh, Inc., 838 F.3d 958, 962 (9th Cir. 2016). However, leave to amend need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

### III. Facts[1]

**A.    The parties.**

Luis Patino, a twenty-nine-year-old man, was incarcerated at Merced County's "Mail Jail" from June 24, 2017, to September 27, 2017. Patino died at the jail on September 27, 2017, from disseminated coccidioidomycosis.

Patino's two minor daughters, Plaintiffs Elenor Patino and Lillyanna Patino, filed this lawsuit against Merced County and several members of the jail's staff, including staff members employed by California Forensic Medical Group, Inc.

California Forensic Medical Group, Inc. ("CFMG") is a company that provides healthcare services to adult and juvenile corrections facilities in California. Merced County contracted CFMG to administer medical care and medication at the Main Jail.

---

[1] The facts come from the factual allegations in Plaintiffs' first amended complaint, Doc. No. 21, which the Court construes as true. See Rio Props., Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).

Defendants Jessica Aguilar, Brandon Boggs, Cindy Estrebillo, Debbie Mandujano, Amber Nunes, Jamie Burns, and Chialia Lewis (hereafter "CFMG Defendants") were employees of CFMG who provided healthcare services at the jail at the time of Patino's incarceration.

**B.      Explanation of Valley Fever and disseminated coccidioidomycosis.**

Valley Fever is the initial form of a fungal infection caused by coccidioides. Valley Fever is often mild, with few, if any, symptoms. However, if the initial coccidioidomycosis infection does not completely resolve, then it may progress to a chronic form of pneumonia known as chronic coccidioidomycosis. Disseminated coccidioidomycosis occurs when the infection disseminates beyond the lungs to other parts of the body, often including the skin, bones, liver, brain, heart, and membranes that protect the brain and spinal cord. The signs and symptoms of disseminated coccidioidomycosis depend on which parts of the body are affected and may include nodules, ulcers, and skin lesions; painful lesions in the skull, spine, or other bones; painful swollen joints, especially in the knees or ankles; and meningitis.

Healthcare providers can easily diagnose Valley Fever by relying on the patient's medical and travel history, symptoms, physical examinations, and laboratory tests. The most common way that healthcare providers test for Valley Fever is by taking a blood sample and sending it to a laboratory to look for coccidioides antibodies or antigens. Other methods for diagnosing Valley Fever include skin tests, tissue biopsies, and imaging tests, such as chest x-rays or CT scans of the lungs. Severe cases of Valley Fever can be treated with a prescription antifungal medication.

The presence of Valley Fever has been increasing in correctional institutions in the San Joaquin Valley, wherein Merced County and the Main Jail are located. In some correctional institutions between 2006 and 2010, the morbidity rate for Valley Fever was as high as seven percent.

**C.      Patino's experience in jail with Valley Fever and disseminated coccidioidomycosis.**

When Patino was first booked at the jail, Patino reported to the jail's staff that he had a history of heart disease, high blood pressure, asthma, bipolar and post-traumatic stress disorder, and a suicide attempt.

1        On September 14, 2017, Patino complained to the jail's staff that he had been experiencing

2 for three days a sharp, strong pain in the left side of his rib cage. Patino rated the pain as "7 on a

3 scale of 0-10." In response to this complaint, Patino was treated by Boggs and Estrebillo. Patino

4 told Boggs and Estrebillo that he did not know how the pain started, but the pain started after he

5 had worked out. Boggs and Estrebillo diagnosed Patino with "MS-Non Traumatic: Vague Muscle

6 Pain" and treated Patino for "a non-traumatic musculoskeletal complaint." Boggs and Estrebillo

7 gave Patino ibuprofen.

8        On September 19, 2017, Patino was given an influenza vaccine by Burns and Lewis.

9        On September 20, 2017, Patino complained to the jail's staff that he was "still" having

10 pains while breathing and was experiencing shortness of breath and chest pain during and after

11 coughing. Patino asked to be "checked again." Patino reported that his cough was productive

12 with yellow sputum. Patino reported that the symptoms began on September 17, 2017, and the

13 onset was gradual. Patino was treated by Boggs and Nunes, who diagnosed Patino with a

14 common cold and upper respiratory infection and prescribed him with guaifenesin, an expectorant,

15 and chlorpheniramine, an antihistamine.

16        On September 21, 2017, Patino complained to the jail's staff that he was experiencing

17 sharp chest pain and a continuous cough. Patino reported that the medication previously given to

18 him was not helping. Patino also reported that he did not feel safe in his cell because he was

19 keeping his cellmates from resting due to his medical issues, such as coughing, and he believed his

20 cellmates were getting upset with him. A CFMG employee[2] diagnosed Patino with "Chest Pain:

21 Musculal-Skeletal." At approximately 8:13 p.m. on September 21, 2017, Aguilar placed Patino in

22 a sobering cell for observation, without a mattress and away from other inmates. At 8:40 p.m. on

23 September 21, 2017, a CFMG employee[3] reported that Patino had a continuous cough.

24        At approximately 9:00 a.m. on September 22, 2017, Patino told a CFMG employee[4] that

25 "he still does not feel well." Patino told the CFMG employee that he was still experiencing chest

26 pain and coughing. Patino told the CFMG employee that it was not safe for him to be in his cell

---

[2] Plaintiffs do not allege who, exactly, the CFMG employee was.
[3] Plaintiffs do not allege who, exactly, the CFMG employee was.
[4] Plaintiffs do not allege who, exactly, the CFMG employee was.

and "he wants to hurt everyone around him." The CFMG employee gave Tylenol to Patino for a fever.

At some point on September 22, 2017, Patino was placed in an interview room. Patino told a prison officer that he could not be in his cell due to his "mental status." Patino told the prison officer that "he wanted to hurt somebody." Mandujano met with Patino, and Patino told Mandujano that "he has not been taking his [mental health] medications," and Patino asked Mandujano to be placed back on his mental health medications. Mandujano reported that Patino would be given his mental health medications.

At approximately 6:14 p.m. on September 22, 2017, Patino complained of chest pain on his left side, possibly related to coughing and laying on the floor without a mattress.

On September 24, 2017, Patino's mother visited Patino and observed that Patino appeared sickly and feverish and was complaining of a sharp pain in his abdomen and loss of appetite.

On September 25, 2017, Mandujano performed a health / psychiatry visit on Patino. Patino told Mandujano that he no longer wanted to take his mental health medications because they made him "feel weird."

During the two weeks preceding September 27, 2017, Patino's three sisters visited Patino and complained that Patino required urgent medical attention.

On September 27, 2017, Patino was in a cell with other cellmates. While doing pushups, Patino had difficulty getting up. One of the cellmates helped Patino sit up. Patino appeared to lose consciousness and was taken out of the cell. Patino was treated by Burns and Lewis, who made no mention of Valley Fever in treating Patino.

On September 27, 2017, Patino died of disseminated coccidioidomycosis. According to the autopsy report, Patino suffered from (1) pulmonary coccidioidomycosis; (2) paracervical, carinal, and hilar lymph node involvement by organizing coccidioidomycosis; (3) fibrinous exudates on external surfaces of pericardial sac and thymus; (4) generalized visceral congestion; (5) hepatomegaly (3075 grams), with steatohepatitus and eosinophilic infiltrates; and (6) splenomegaly (520 grams), congestive, with diffuse lymphoid hyperplasia and rare abscesses.

Defendants never provided Patino with antifungal medications to treat Valley Fever and disseminated coccidioidomycosis.

## IV. Discussion

**A. Legal standard for deliberate indifference to a convicted prisoner's right to adequate medical treatment under the Eighth Amendment.**

Plaintiffs claim that the CFMG Defendants were deliberately indifferent to Patino's serious medical needs in violation of the Eighth Amendment.[5] "[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citations omitted). "The [Eighth] Amendment . . . imposes duties on these [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." Id. (citations omitted).

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Id. at 828 (citations omitted). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." Id. at 835 (citations omitted). Deliberate indifference exists "somewhere between the poles of negligence at one end and purpose or knowledge at the other." Id. at 836 (citations omitted). "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." Id. "[T]he official must . . . be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists." Id. at 837.

---

[5] In the complaint, Plaintiffs also claim that the CFMG Defendants were deliberately indifferent to Patino's serious medical needs in violation of the Fourteenth Amendment. Whether Plaintiffs' deliberate indifference claim is premised on the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment depends on whether Patino was a convicted prisoner or a pretrial detainee. See Gordon v. Cty. of Orange, 888 F.3d 1118, 1125 (9th Cir. 2018). Whereas a pretrial detainee's right to medical treatment arises under the Due Process Clause of the Fourteenth Amendment, a convicted prisoner's right to medical treatment arises under the Eighth Amendment. Plaintiffs' complaint does not specifically allege whether Patino was a pretrial detainee or convicted prisoner. But in Plaintiffs' opposition to the CFMG Defendants' motion to dismiss, Plaintiffs addressed the deliberate indifference claim only under the Eighth Amendment standard. Therefore, for purposes of adjudicating the CFMG Defendants' motion to dismiss, the Court construes Plaintiffs' deliberate indifference claim as arising under the Eighth Amendment.

"In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citations omitted).

Under the first prong, "deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992) (citations omitted). "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" Id. (citations omitted). "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." Id. at 1059-60 (citations omitted).

The second prong — that the defendant's response to the serious medical need was deliberately indifferent — is satisfied by showing that (1) "the course of treatment the doctors chose was medically unacceptable under the circumstances" and (2) "that the defendants chose this course in conscious disregard of an excessive risk to plaintiff's health." Snow v. McDaniel, 681 F.3d 978, 987-88 (9th Cir. 2012) (citations omitted). Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." Jett, 439 F.3d at 1096 (citations omitted). However, the defendant's inadvertent or negligent failure to provide adequate medical care does not alone show deliberate indifference under the Eighth Amendment. Id. (citations omitted). "Even proof that a physician has committed medical malpractice does not necessarily violate the Eighth Amendment." Snow, 681 F.3d at 987 (citations omitted). See also Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004) ("A showing of medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment."). "A difference of opinion between a physician and the prisoner — or between medical

7

1 professionals — concerning what medical care is appropriate does not amount to deliberate
2 indifference." Snow, 681 F.3d at 987 (9th Cir. 2012). "[W]here a defendant has based his actions
3 on a medical judgment that either of two alternative courses of treatment would be medically
4 acceptable under the circumstances, plaintiff has failed to show deliberate indifference, as a matter
5 of law." Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

"A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Estate of Ford v. Ramirez-Palmer, 301 F.3d 1043, 1050 (9th Cir. 2002). "Thus, a reasonable prison official understanding that he cannot recklessly disregard a substantial risk of serious harm, could know all of the facts yet mistakenly, but reasonably, perceive that the exposure in any given situation was not that high. In these circumstances, he would be entitled to qualified immunity." Id.

**B.      Plaintiffs' complaint fails to show deliberate indifference by the CFMG Defendants.**

Defendants argue that Plaintiffs' complaint fails to show that the CFMG Defendants were deliberately indifferent to Patino's serious medical needs. According to Defendants, the complaint shows, at most, that the CFMG Defendants were negligent, which does not amount to deliberate indifference. The Court agrees with Defendants. In each instance where the CFMG Defendants were alleged to have responded to Patino's medical complaints between September 14, 2017, and September 27, 2017, the complaint fails to adequately show that, first, the CFMG Defendants' course of treatment was medically unacceptable under the circumstances and, second, the CFMG Defendants chose the course of treatment in conscious disregard of an excessive risk to Patino's health.

For example, after Patino complained on September 14, 2017, of sharp pain in his rib cage after having worked out, Boggs and Estrebillo diagnosed Patino with muscle pain and treated Patino with ibuprofen. These allegations do not show that Boggs's and Estrebillo's course of

treatment was medically unacceptable or taken in conscious disregard of an excessive risk to Patino's health.

Similarly, after Patino complained of chest pain and coughing on September 20, 2017, Boggs and Nunes diagnosed Patino with a common cold and upper respiratory infection and prescribed Patino with an expectorant and antihistamine. These allegations do not show that Boggs's and Nunes's course of treatment was medically unacceptable or taken in conscious disregard of an excessive risk to Patino's health.

Similarly, after Patino complained of chest pain and coughing on September 21, 2017, Aguilar placed Patino in a sobering cell for observation. These allegations do not show that Aguilar's course of treatment was medically unacceptable or taken in conscious disregard of an excessive risk to Patino's health.

Similarly, after Patino complained that he "still does not feel well," was experiencing chest pain and coughing, and "wanted to hurt somebody" because he had not been taking his mental health medications, the responding (and unidentified) CFMG employee gave Tylenol to Patino for a fever and Mandujano reported that Patino would be given his mental health medications. These allegations do not show that the unidentified CFMG employee's and Mandujano's course of treatment was medically unacceptable or taken in conscious disregard of an excessive risk to Patino's health.

Similarly, after Patino lost consciousness on September 27, 2017, Burns and Lewis treated Patino and made no mention of Valley Fever. These allegations do not show that Burns's and Lewis's course of treatment was medically unacceptable or taken in conscious disregard of an excessive risk to Patino's health.

At most, Plaintiffs' foregoing allegations show that the CFMG Defendants misdiagnosed Plaintiff's medical condition, but the allegations do not show that the misdiagnosis was the result of deliberate indifference. Consequently, the complaint fails to show deliberate indifference as a matter of law. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

Plaintiffs' reliance on Scalia v. County of Kern, 308 F. Supp. 3d 1064 (E.D. Cal. 2018) is unavailing and, in fact, supports the Court's foregoing analysis. In Scalia the complaint's

9

allegations told the following story: (1) a female inmate fell five feet from her bunkbed onto a concrete floor, and the inmate hit her head on the concrete floor; (2) because of the inmate's impact with the concrete floor, the inmate immediately experienced a visible bump over her left eyebrow; (3) the inmate was transported from her cell to the jail's infirmary by wheelchair because the inmate was unable to walk and could not ambulate on her own; (4) the responding healthcare provider spent less than ten minutes with the inmate and discharged the inmate without any follow-up plan to monitor the inmate, without seeking the opinion of a physician, and without conducting any tests of head trauma; (5) the inmate ultimately died from head trauma. The complaint alleged that the inmate "faced a serious medical need for evaluation and treatment regarding possible traumatic brain injury and that in the case of traumatic brain injury immediate medical treatment is required to avoid bleeding in the brain, brain swelling, subdural hematoma, and other progressively serious results including death." Id. at 1077.

      The district court in Scalia concluded that these allegations sufficiently showed deliberate indifference. But the allegations in Scalia are easily distinguishable from the allegations in Plaintiffs' complaint. Based on the allegations in Scalia, the healthcare provider's course of treatment (or lack thereof) was obviously unacceptable: the inmate complained of head trauma and clearly experienced head trauma, but the healthcare provider failed to provide treatment that was acceptable for head trauma — such as monitoring the inmate, seeking the opinion of a physician, and conducting head trauma tests. Here, by contrast, Plaintiffs allege that Patino experienced a gradual onset of coughing, shortness of breath, and chest pain over thirteen-day period, all of which occurred shortly after Patino exercised. In response, the CFMG Defendants — on successive and separate occasions during the thirteen-day period — diagnosed Patino with muscle pain, a cold, and an upper respiratory infection and treated Patino by giving him Tylenol, ibuprofen, an influenza vaccine, and monitoring him a sobering cell. These allegations do not show that it was medically unacceptable for the CFMG Defendants to not diagnose and treat Plaintiff for Valley Fever and disseminated coccidioidomycosis. Moreover, these allegations do not show that the CFMG Defendants chose their course of treatment in conscious disregard of an excessive risk to Patino's health.

Defendants also argue that Plaintiffs' deliberate indifference claim against the CFMG Defendants should be dismissed because Plaintiffs "merely conclusory utilize the requisite § 1983 language and lump all defendants, both medical and custodial into a single entity." Doc. No. 33-1 at 6. The Court disagrees. The complaint levels specific factual allegations against each of the CFMG Defendants — although, as discussed supra, those allegations fail to show deliberate indifference by any of the CFMG Defendants. See, e.g., Doc. No. 21 at ¶ 42 (allegation against Aguilar); id. at ¶ 38 (allegation against Boggs); id. at ¶ 52 (allegation against Burns); id. at ¶ 38 (allegation against Estrebillo); id. at ¶ 51 (allegation against Mandjano); id. at ¶ 40 (allegation against Nunes).

**C.    Dismissal with leave to amend.**

Because the complaint fails to state a deliberate indifference claim against the CFMG Defendants, the deliberate indifference claim against the CFMG Defendants will be dismissed. However, because it is not clear that the deficiencies with the deliberate indifference claim cannot be cured by amendment, and because Plaintiffs have not previously attempted to cure the deficiencies with the deliberate indifference claim,[6] the deliberate indifference claim against the CFMG Defendants will be dismissed with leave to amend. See Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016) (suggesting that leave to amend should be granted if it is possible to cure the complaint's deficiencies and the plaintiff has not previously been given the opportunity to cure the deficiencies); Sarkiss v. Duncan, 2017 WL 10562979, at *8 (C.D. Cal. Sept. 22, 2017) (granting leave to amend because it was not "absolutely clear" that it was futile to attempt to cure the deficiencies with the complaint's medical treatment deliberate indifference claim). Accordingly, if Plaintiffs desire to pursue their deliberate indifference claim against the CFMG Defendants, then Plaintiffs must file an amended deliberate indifference claim by March 17, 2020. The amended claim must allege overt acts or omissions that show that each CFMG Defendant was deliberately indifferent to Plaintiff's serious medical needs.

---

[6] By way of a stipulation and order, Plaintiffs previously amended their complaint — but that amendment simply added new defendants to Plaintiffs' claims. See Doc. No. 19 (stipulation to amend complaint); Doc. No. 20 (order granting stipulation to amend complaint); Doc. No. 21 (first amended complaint).

11

# **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. The CFMG Defendants' motion to dismiss (Doc. No. 33) is GRANTED, as follows;
    a. Plaintiffs' deliberate indifference claim against the CFMG Defendants (first cause of action) is DISMISSED with leave to amend;
    b. Plaintiffs shall have until March 17, 2020, to FILE an amended deliberate indifference claim against the CFMG Defendants. The failure to file an amended deliberate indifference claim against the CFMG Defendants by March 17, 2020, will result in the dismissal with prejudice of the deliberate indifference claim against the CFMG Defendants.

IT IS SO ORDERED.

Dated: March 3, 2020

_____
SENIOR DISTRICT JUDGE